AO 106 (Rev. 04/10) Application for a Search Warrant

**FILED**

APR 0 5 2019

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT
### for the
### Southern District of California

In the Matter of the Search of                    )
*(Briefly describe the property to be searched*     )
*or identify the person by name and address)*       )   Case No.
                                                    )
Black Chevy Malibu                                  )
bearing California License Plate 6ZQH509            )

**1 9 MJ 1372**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

As described in attachment A, incorporated herein by reference

located in the _____Southern_____ District of _____California_____, there is now concealed *(identify the person or describe the property to be seized):*

As described in attachment B, incorporated herein by reference

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. s. 3512(a)(2)(A) | Foreign request for assistance |
| NSW Crimes Act of 1900 Sections 18 and 192E | Murder, Fraud |

The application is based on these facts:
Set forth in the attached affidavit, incorporated herein by reference

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

FBI Special Agent Michelle Hart
*Printed name and title*

Sworn to before me and signed in my presence.

Date: April 5, 2019

_____
*Judge's signature*

City and state: San Diego, California

Hon. Andrew G. Schopler, United States Magistrate Judge
*Printed name and title*



**A F I D A V I T**

I, Michelle E. Hart, being duly sworn, hereby depose and state as follows:

**AFFIANT**

1.     I am a Special Agent (SA) with the Federal Bureau of Investigation (FBI), and have been so employed since July 2015.  I am currently assigned to the Violent Crimes Squad of the San Diego Field Office, where I investigate violent crimes to include, but not limited to, bank robberies, extortions, assaults against federal officers, kidnappings, and murders of United States citizens in foreign countries.  My experience as an FBI Agent has included training and experience in interviewing and interrogation techniques, arrest procedures, search warrant applications, the execution of searches and seizures, the use of confidential human sources, electronic and physical surveillance techniques, forensic techniques, computer crimes, computer evidence identification, computer evidence seizure and processing, and various other criminal laws and procedures.  I have personally prepared search and arrest warrants and have led and participated in the execution of search and arrest warrants.

**INTRODUCTION**

2.     Based on my training and experience and the facts set forth in this Affidavit, I respectfully submit that there is probable cause to believe that violations of Crimes Act of 1900 of New South Wales (Australia), specifically Section 18 (murder) and Section 192E (fraud) have been committed by Alex Dion.

3.     This warrant seeks to collect and seize evidence requested by Australia in its treaty request (the "Request") made pursuant to the Treaty between Australia and the United States of America on Mutual Assistance in Criminal Matters, Aust. - U.S., April 30, 1997, S. TREATY DOC. NO. 105-27 (the "Treaty") and authorized by the Treaty and 18 U.S.C. § 3512.  The warrant will be executed by myself, fellow FBI Agents, with the assistance of the assigned New South Wales homicide detectives.

4.     18 U.S.C. § 3512(a)(1) authorizes a Federal judge to order "such orders as may be necessary to execute a request from a foreign authority for assistance in the

1  investigation or prosecution of criminal offenses, or in proceedings related to the
2  prosecution of criminal offenses . . ." Specifically included in the scope of orders that are
3  authorized by § 3512 are search warrants, "as provided under Rule 41 of the Federal Rules
4  of Criminal Procedure." 18 U.S.C. § 3512(a)(2)(A).

5       5.    Search warrants sought under these provisions must be filed in the district in
6  which the person or place to be searched is located. 18 U.S.C. § 3152(d). As described
7  below and in Attachment A – incorporated herein by reference – the Subject Vehicle to be
8  searched pursuant to this warrant is located in the Southern District of California.

9       6.    Search warrants sought under these provisions may only be issued if the
10  foreign offense for which evidence is sought "involve[] conduct that, if committed in the
11  United States, would be considered an offense punishable by imprisonment for more than
12  one year under Federal or State law." Based on information provided to me by the
13  government of Australia and Assistant United States Attorney Benjamin J. Katz, I know
14  that the crime of murder is defined by Section 18 of the Crimes Act of 1800 as "an offence
15  to commit or omit an act, causing the death with reckless indifference to human life, or
16  with intent to kill or inflict grievous bodily harm upon some person, or done in an attempt
17  to commit, or during or immediately after the commission, by the accused, or some
18  accomplice with him or her." I also know that the crime of fraud, as defined by Section
19  192E of the Crimes Act of 1800 occurs when "a person who, by any deception, dishonestly
20  obtains property belonging to another or obtains any financial advantage or causes any
21  financial disadvantage." I submit that these definitions render murder and fraud crimes
22  that meet the foreign offense requirement of § 3512(e).

23       7.    I make this affidavit in support of an application for a warrant to search the
24  vehicle of Alex Dion ("the Subject Vehicle"), which is currently located in a secure lot at
25  the FBI's San Diego Division office, 10385 Vista Sorrento Parkway in San Diego,
26  California (described in Attachment A, incorporated herein), which I respectfully submit,
27  based on my training and experience and the evidence set forth below, there is probable

28

2

1  cause to believe that the Subject Vehicle contains and conceals evidence of the various
2  criminal offenses set forth above.

3       8.      The facts set forth in this affidavit are based on my own personal knowledge,
4  communications with others who have personal knowledge of the events and circumstances
5  described herein, information received from New South Wales Police ("NSW Police")
6  regarding their interviews of witnesses, my review of evidence related to this investigation
7  and the summaries of evidence provided by my counterparts in the NSW Police, and
8  information gained through my training and experience and in discussions with other
9  agents.  Except where otherwise noted, the information provided in the Statement of
10 Probable Cause below was provided to me by the NSW Police and confirmed by the
11 assigned Homicide Detective, who reviewed this affidavit on April 3, 2019.  Because this
12 affidavit is submitted for the limited purpose of establishing probable cause in support of
13 the application for a search warrant, it does not set forth each and every fact that I or others
14 have learned during the course of this investigation.

15            **STATEMENT OF PROBABLE CAUSE**

16 **A. The Murder of Wachira Phetmang**

17      9.      Wachira Phetmang ("Phetmang") was a 33-year old Thai national who resided
18 in Hurtsville, NSW[1], Australia with his partner Karn Maneesuriya ("Maneesuriya").
19 Australian immigration records establish that Phetmang first came to Australia in 2000 and
20 that he was a legal permanent resident of the country at the time of his death.

21      10.     The NSW Police investigation found that Phetmang owned two mobile
22 phones: (1) a Samsung Galaxy S8 with an IMEI number ending in -0040 and a phone
23 number ending in -9594; and (2) an Apple iPhone X with an IMEI number ending in -9143
24 and a phone number ending in -9880.

25
26
27
───────────────────
[1] The Hurtsville area is labeled as Point A in the map attached as Exhibit 1 to this warrant.
28

11.     On Wednesday, June 6, 2018,[2] a truck driver discovered Phetmang's body by the side of Homebush Bay Drive, a freeway near Sydney's Olympic Park.[3]

12.     Phetmang's body was wrapped in black plastic "corflute sheeting" which was tied with a white rope.   Corflute sheeting is commonly used by tilers and other tradespersons to protect floor tiles from damage.  Phetmang's wrists and ankles were bound with strips of a torn t-shirt, and more of the same t-shirt material was stuffed into his mouth.

13.     No mobile phones, wallet, or shoes were found on Phetmang's body, however a single black size 12 men's Dewalt work boot was found under the corflute sheeting.

14.     An autopsy determined that Phetmang had suffered more than 20 wounds to his head and multiple skull fractures.  In addition, his nose and one of his thumbs were fractured.  The preliminary cause of death given by the examining pathologist was "head injuries."  The forensic pathologist also concluded that Phetmang's body may have been by the side of the road for a number of days prior to its discovery on June 6, 2018.

15.     Based on the facts below, the NSW Police have concluded that Alex Dion ("Dion"), an American citizen currently housed at the Metropolitan Correctional Center in San Diego, California, murdered Phetmang sometime between May 25, 2018 and May 27, 2018, when Dion fled to the United States.

**B. Dion's Arrest and Extradition Proceedings**

16.     Based on the information below, on September 11, 2018, the Parramatta (NSW) Local Court issued an arrest warrant for Dion for the offense of Murder.

17.     On September 21, 2018, Dion was arrested based on a provisional arrest warrant signed by United States Magistrate Judge Mitchell D. Dembin.  A full extradition package was subsequently received and following an extradition hearing was certified extraditable and committed for extradition by United States Magistrate Judge Bernard G. Skomal (case no. 18-mj-4867).  He is currently scheduled to be handed over to Australian authorities for extradition on April 12, 2019.

---

[2] All dates and times in this affidavit are in the relevant local time.

[3] The approximate location of where Phetmang's body was found is labeled Point B in Exhibit 1.

**C. Phetmang's Last Known Movements – May 25, 2018**

18.    The NSW Police investigation determined that prior to his death, Phetmang frequently purchased, used, and sold small quantities of methamphetamine.

19.    According to Maneesuriya, Phetmang left his Hurtsville residence at approximately 12:30 pm on Friday May 25, 2018 after saying that he was going to pick up a half of gram of methamphetamine that had been left out of a quantity that he had sold to an associate – Farhad Ghahremani ("Ghahremani") the previous day purchased near Mr. B's Hotel in Sydney's Central Business District.[4]

20.    Beginning at approximately 9:50 am on May 25, 2018, Phetmang was in regular mobile phone contact with Dion. Dion and Phetmang met at approximately 7:00 pm that evening.

21.    According to a witness interview conducted by NSW Police with Jetsadakorn Khumpol ("Khumpol"), an associate of Phetmang, Phetmang asked to borrow money on May 25, 2018 to purchase methamphetamine that he intended to sell to a "customer." Dion also stated in a telephone call to NSW Police that he met with Phetmang on the evening of May 25, 2018 to purchase AUD $900 worth of methamphetamine.

22.    At about 7:30 pm on May 25, 2018, Phetmang and Dion travelled in Dion's 2004 Hyundai Terracan to a 7-Eleven convenience store in South Hurtsville.[5] Security footage obtained by the NSW Police Force shows Dion made three attempts to use the store's ATM. In the footage, Dion is wearing a blue t-shirt with a distinctive white design on it. This t-shirt matches the t-shirt that was used to bind the wrists and ankles of Phetmang's body.

23.    At approximately 7:38 pm, Phetmang and Dion left the 7-Eleven in Dion's Hyundai. According to records received by NSW Police from Phetmang's Google account, at that time he begin a 33-minute trip from the 7-Eleven to a location approximately 100

---

[4] Mr. B's Hotel is labeled as Point C on Exhibit 1.

[5] The 7-Eleven location is labeled as Point D on Exhibit 1.

5

1  meters from Dion's apartment at 15/473 Burwood Road, Belmore, NSW[6] (hereinafter the
2  "Belmore Unit").

3      24.    At approximately 11:02 pm on May 25, 2018, Pichet Laowongkot
4  ("Laowongkot"), an associate of Phetmang's received a call from Phetmang's phone, but
5  Laowongkot could not hear anyone speaking.  According to Laowongkot, around the same
6  time, he received a text from Phetmang's Samsung phone which read, "[C]an I call you
7  back later."  When interviewed, Laowongkot noted that the use of English in this message
8  – rather than his and Phetmang's native Thai – was unusual.  Cell phone tower records
9  establish that at the time this text was sent, Phetmang's phone was in the Kingsgrove area.[7]

10      25.    At approximately 11:05 pm on May 25, 2018, Dion's roommate and employer
11  Adib El-Anani ("El-Anani") received a number of text messages from Phetmang's phone
12  offering to sell El-Anani methamphetamine and stating that Phetmang was in the
13  Kingsgrove area.  In an interview, El-Anani stated that he did not see these messages as he
14  was asleep at the time they were received.

15      26.    Based on witness interviews conducted by NSW Police and phone records, all
16  calls and messages to Phetmang from family and associates after May 25, 2018 appear to
17  have gone unanswered.

18  **D. May 27, 2018 - Dion's Movements and Flight from Australia**

19      27.    About 5:53 am on Sunday, May 27, 2018, Dion's mobile telephone connected
20  to a cell tower at Sydney Olympic Park. At approximately 6:24 am on Sunday, May 27,
21  2018, Dion's mobile telephone activated cell towers in the East Killara area of Sydney.
22  Consistent with this, a vehicle matching Dion's was seen on surveillance footage on Savoy
23  Avenue, a street in East Killara.

24      28.    According to information received as part of the NSW Police investigation,
25  the following day a construction worker located clothing and items in garbage bags inside

26

27      [6] The Belmore Unit is labeled as Point E on Exhibit 1.

28      [7] The Kingsgrove area is labeled as Point F on Exhibit 1.

1 a water retention tank located below a garage at a property under construction on Redfield
2 Road in the same East Killara area.[8]  Dion and El-Anani had previously worked at this
3 property as tilers.

4       29.     NSW Police obtained the property that was discovered in the water tank and
5 elsewhere on the Redfield Road property, which included:

6                      a.  shoes, a cap, a jacket, and glasses that appear identical to those worn by
7                          Phetmang in the May 25, 2018 7-Eleven surveillance footage and
8                          Phetmang's DNA profile was located on some of these items;

9                      b.  work trousers similar in appearance to those worn by Dion in the May
10                          25, 2018 7-Eleven surveillance footage;

11                     c.  black colored material similar to that located around Phetmang's ankles;

12                     d.  two tire irons and a metal bar;

13                     e.  documents bearing the name of Dion's wife Aycha El-Lon ("El-Lon").

14      30.     At approximately 12:28 pm on May 27, 2018, Dion dialed "000" – the
15 Australian equivalent of 911 – using his mobile telephone.  Dion told the operator that he
16 was a United States citizen in Sydney visiting a friend.  Dion identified himself by name
17 and stated that his friend was a drug user who he was attempting to get help, but that a
18 "drug dealer" had found this out and telephoned Dion to threaten him.  The operator tried
19 to convince Dion to meet police to discuss the matter, but Dion hung up and could not be
20 contacted again.  Cell phone tower records show that Dion's phone was in the East Killara
21 area when he made this call.

22      31.     Cell phone records establish that after making this call, Dion left the East
23 Killara area and returned to the Belmore Unit.

24      32.     Based on witness interviews and evidence uncovered in the course of their
25 investigation, NSW Police believe that upon returning to the Belmore Unit on May 27,
26 2018, Dion used a high-pressure washer and cleaning products from his apartment to wash

27

28        [8] The Redfield Road location is labeled as Point G in Exhibit 1.

the interior of his vehicle in a car wash bay housed in the underground parking lot of the Belmore Unit. Consistent with this conclusion, El-Anani reported that the following day, Monday, May 28, 2018, he discovered that many of Dion's possessions were missing from their apartment. El-Anani also discovered Dion's vehicle in the parking garage. According to El-Anani, the vehicle was not in its assigned parking space, had been left unlocked with the windows down, and the interior saturated with water.

33. At approximately 6:00 pm on May 27, 2018, Dion travelled from the Belmore Unit to Sydney International Airport via Uber. At approximately 9:00 pm, Dion departed Sydney on a Hawaiian Airlines flight 452 to Honolulu. TECS records that I have reviewed establish that Dion was inspected by CBP after landing on this flight at the Honolulu Airport at 11:26 am on May 27, 2018.[9] Dion then flew from Honolulu to San Diego later on the same day.

34. Purchase records from Expedia.com that were received by NSW Police and that I have reviewed show that this return flight was purchased using a credit card in the name of El-Lon at 8:10 pm on May 26, 2018 from an IP address located in Poway, California. Factoring in the time change, this means that the flight was purchased at 1:10 pm in Sydney, approximately 40 minutes after Dion's 000 call and eight and a half hours before the flight took off. The address listed for the purchaser is Dion's former address but does not include the apartment number.

**E. Physical Evidence Connecting Dion to Phetmang's Murder**

35. As discussed above, the t-shirt that Dion is wearing in the May 25, 2018 7-Eleven footage appears to match the strips of t-shirt material that were used to bind Phetmang's wrists and were stuffed into his mouth. The image below shows the strips discovered with Phetmang's body and the 7-Eleven footage.

---

[9] This local time is before Dion's departure from Sydney because Australia is on the opposite side of the International Date Line, meaning that this approximately 10 hour flight lands several hours "before" it took off.

1
2
3
4
5
6
7
8
9
10

 

**T-Shirt Strips Recovered with Phetmang's Body (Left); Dion in 7-Eleven Footage (Right)**

11
12
13
14

36.     On June 19, 2018, NSW Police executed a search warrant on the Belmore Unit. As part of the execution of this warrant, they conducted a forensic examination of the apartment, the car wash bay in the apartment complex's garage, and both Dion and El-Anani's vehicles.

15
16
17
18
19
20
21
22
23
24
25
26

37.     In the course of the search, NSW Police seized the following:

    a. A black Dewalt work boot matching the boot that was found under Phetmang's body. According to El-Anani, these boots belonged to Dion, who had stolen them some weeks prior at a Bunnings[10] store;

    b. sheets of black corflute plastic identical to those that were wrapped around Phetmang's body. These sheets were located both in the car wash bay and inside Dion's vehicle;

    c. cigarette butts, gloves, medications bearing Dion's name, and other items that El-Anani stated belonged to Dion;

    d. a mattress that was found in the Belmore Unit's underground parking garage that El-Anani stated had previously been in Dion's room.

27
28

---

[10] Bunnings is an international hardware and garden chain with locations in Australia, New Zealand, the United Kingdom, and Ireland.

38.    DNA testing conducted by NSW Police found DNA traces belonging to an unknown individual on:

    a.  On the material gag located in Phetmang's mouth one of the rope bindings tied around the black Corflute plastic surrounding Phetmang's body;

    b.  the knotted blue and white T-shirt that was tied around Phetmang's wrists;

    c.  the wall of the car wash area in the underground garage of the Belmore Unit;

    d.  the two pairs of men's trousers located in the water tank at Redfield Road, East Killara.

39.    The DNA pulled from these items matches the DNA located on the cigarette butts, mattress, and medication packets in Dion's name, seized during the search warrant at the Belmore Unit.   The DNA pulled from these items also matched clothes that, according to a witness interviewed by NSW Police, had been abandoned by Dion at an old address in Melbourne, Victoria.   The analysis also specifically excluded El-Anani and Ghahremani as being the source of this DNA.  Based on these facts, the NSW Police believe that the DNA belongs to Dion.

40.    In addition, DNA analysis showed that DNA matching Phetmang's was found on the following items:

    a.  The driver's side headrest of Dion's Hyundai vehicle;

    b.  a blood stain in the knee area of the pants that appeared identical to Dion's that were found in the water tank at the Redfield Road location

**F. Dion's Possession and Use of Phetmang's Property**

41.    NSW Police believe, based on their investigation, that at the time he departed Sydney on May 27, 2018, Dion had in his possession Phetmang's mobile telephone as well as at least three of Phetmang's credit cards.

42.    At approximately 8:20 pm on May 27, 2018, El-Anani received text messages from Phetmang's mobile phone that purported to offer methamphetamine for sale in the Hurtsville area.   Based on those text messages, El-Anani went to Hurtsville to meet

1 Phetmang, but Phetmang did not arrive, and his phone was shut off when El-Anani
2 attempted to reach him. Cell tower records show that the at the time these messages were
3 sent, Phetmang's phones were in the area of the Sydney airport and that after they were
4 sent Phetmang's mobile phones left Australia at approximately the same time that Dion's
5 did and subsequently connected to cell phone towers in the United States. NSW Police
6 therefore believe that these messages were actually sent by Dion using Phetmang's phone
7 while Dion waited to take off from the Sydney airport.

8 43. Furthermore, bank records reviewed by the NSW Police show that multiple
9 unsuccessful attempts were made to use one of Phetmang's credit cards in the United States
10 and Tijuana between June 11, 2018 and June 19, 2018.

11 44. A second card, one issued by St. George Bank ending in -7398, was
12 successfully used on several occasions in California and Tijuana between June 10 and June
13 20, 2018.

14 45. For example, records relating to Phetmang's -7398 credit card show that on
15 June 16, 2018 at approximately 3:34 pm, AUD $149.28 was spent on a purchase at Baja
16 Duty Free in San Ysidro California. On the same day, charges of AUD $15.54 and $20.54
17 were made at Café De La Flora in Tijuana, Mexico at 4:54 pm and 5:09 pm respectively.
18 TECS records that I have reviewed show that less than an hour later – at 6:05 pm, Dion
19 entered the United States from Tijuana via the vehicle lanes of the San Ysidro port of entry.

20 46. Later that same day, at approximately 8:19 pm, Phetmang's card was used for
21 an AUD $19.92 purchase at North Park Produce in Poway, California. Surveillance video
22 obtained by the San Diego County Sherriff's office in response to an Interpol request by
23 NSW Police shows that Dion made this purchase.

24 **G. Dion's Calls to NSW Police Regarding Phetmang's Murder**

25 47. On June 20, 2018, NSW Police issued a press release requesting information
26 relating to Phetmang's movements and any sightings of Dion's vehicle around the time of
27 the murder. On the same day, Dion called the NSW Police from the United States and
28 made a number of statements regarding the events discussed above, Phetmang,

11

**1** Ghahremani, El-Anani, and methamphetamine purchases amongst himself and these three.
**2** Dion began the conversation by stating that he was calling because he had seen media
**3** reports regarding his vehicle and that he believed that El-Anani "has done something bad."

**4**     48.    At points in the conversation, Dion stated that he had text messages and
**5** WhatsApp correspondence with these individuals regarding drug transactions, his vehicle,
**6** and Phetmang's murder.   Dion stated that he had numerous screenshots and saved
**7** messages on his phone with El-Anani that he would send to NSW Police, but to date, Dion
**8** has not sent these communications.

**9**     49.    In the same conversation, Dion stated that on the night he last saw Phetmang
**10** – presumably May 25, 2018 – he met Phetmang and went to a 7-Eleven ATM for the
**11** purpose of buying methamphetamine for El-Anani. Dion claimed that he left the 7-Eleven
**12** after El-Anani showed up, with Phetmang still present. This claim is contradicted by the
**13** 7-Eleven surveillance footage, which does not show El-Anani being present and shows that
**14** Phetmang and Dion left together.

**15**     50.    Between June 27, 2018 and June 29, 2018, NSW Police Homicide Detectives
**16** exchanged emails and had multiple telephone conversations with Dion.   In that
**17** correspondence, Dion stated that he was in possession of some of Phetmang's property,
**18** including two mobile phones.

**19**     51.    During one of the phone calls, Dion briefly put his wife, Aycha El-Lon ("El-
**20** Lon") on the phone to talk to the detectives. El-Lon stated that she had purchased Dion's
**21** May 27, 2018 flight reservation from Sydney to the United States because she believed
**22** Dion had been threatened by multiple people in Australia.   This claim contradicts
**23** statements Dion made to the NSW Police and others regarding his reason for leaving
**24** Australia. For example, in the June 20, 2018 phone call with NSW Police, Dion stated that
**25** he returned to the United States because an insurance matter that he had been waiting to
**26** settle had been completed. According to a witness interview with Soma Hart, an associate
**27** of Dion's with whom he had conversations on the date of his departure, Dion told Hart that
**28** he was leaving for the United States because El-Lon was suffering with cancer and there

was a risk that Dion and El-Lon's minor children would be taken away if she was unable to care for them.

52.     On June 29, 2018, Dion sent an email that included a photo attachment of Phetmang's property that Dion was in possession of in the United States.  That photo, is below, and includes multiple credit cards, a mobile phone, a thumb drive, and other miscellaneous items.



## H. Probable Cause That Evidence is Located in the Subject Vehicle to Be Searched

53.     On September 12, 2018, Task Force Officer (TFO) Angela Tsuida and I interviewed Dion's ex-wife, Aycha El-Lon.  During the interview, El-Lon explained that when Dion returned from Australia on May 27, 2018 he did not have a car.  Initially Dion drove El-Lon's car, but she needed her car in order to take care of her children.  El-Lon purchased the Subject Vehicle for Dion shortly after his return.  Dion was supposed to register the car in his name, but El-Lon explained that to her knowledge Dion never completed the registration.  El-Lon provided me with the registration card for the car and pointed out that it still had the previous owner's name on it instead of Dion's name.  El-Lon believed that the title was inside the car.

54.     During the September 12, 2018 interview, El-Lon told me that she believed the Subject Vehicle was still parked at Barona Casino.  Dion had been at the casino and decided he wanted to see his children so he took a taxi cab to El-Lon's apartment on September 6, 2018.  While at the apartment, Dion was arrested by a bail bondsmen due to

1    a previous domestic violence charge. Additionally, after Dion was arrested, Dion called
2    El-Lon and asked her to come pick up his car key from San Diego County Central Jail and
3    move the car from the casino so that it would not be towed. El-Lon believed all of Dion's
4    property was in his car because he moved all of his belongings out of her apartment
5    following an argument they had about a month and a half after Dion returned to the United
6    States from Australia.

7       55.    On September 12, 2018 after interviewing El-Lon, TFO Tsuida and I went to
8    Barona Casino and located the Subject Vehicle in the "Diamond Lot" located closest to the
9    front door of the casino.

10       56.    Barona Casino security staff confirmed that the Subject Vehicle had been at
11    the casino since September 6, 2018 and had not moved since that time. Barona Casino
12    personnel provided me with a copy of a win/loss balance statement for Barona Account #
13    1146574, as well as a letter dated September 12, 2018 which the casino sent to Dion at his
14    request. The win/loss balance sheet showed Dion had visited the Barona Casino 48 times
15    between May 28, 2018 and September 6, 2018. The Subject Vehicle was then towed to
16    the San Diego FBI Office and stored in a secured lot. I followed the tow truck from the
17    casino to the San Diego FBI Field Office and had it within my sight at all times.

18       57.    Based on my experience and training, and the information set forth herein,
19    there is probable cause that the following items will be found in the Subject Vehicle and
20    that these items/information constitute evidence relating to violations of Section 18 of the
21    Crimes Act of 1900 (murder) and Section 192(E) of the Crimes Act of 1900 (fraud):

22           a. Property belonging to Phetmang, including bank cards, identification
23             documents, a thumb drive, mobile phones, SIM cards, and other items;
24           b. communications, records, or other evidence of statements made by Dion or
25             others regarding his interactions with Phetmang and/or Phetmang's murder,
26             including, but not limited to, communications with El-Anani and other
27             associates of Phetmang;

28

      c. receipts, records, or other such documents reflecting or related to purchases made or transactions attempted using Phetmang's bank or credit cards;

      d. receipts, records, itineraries, communications, or other such documents reflecting or related to the purchase of the air travel for Dion from Australia to the United States on or about May 27, 2018;

      e. records or communications in any form, whether electronic or otherwise, regarding the sale, purchase, or transfer of methamphetamine or other related transactions between Dion and others, including but not limited to Phetmang, El-Anani, Hart, and Ghahremani;

      f. records or communications in any form, whether electronic or otherwise, between Dion and others regarding the reason, timing, or other matters relating to his departure from Australia to the United States on or about May 27, 2018.

      g. documents, receipts, communications, or other records relating to Dion's travel to and from Tijuana, Mexico between May 27, 2018 and June 30, 2018.

**I. Procedures For Electronically Stored Information**

58. With the approval of the Court in signing this warrant, agents executing this search warrant will either turn over to Australian authorities for electronic search or employ the following procedures regarding computers and other electronic storage devices, including mobile phones and electronic storage media, that may contain data subject to seizure pursuant to this warrant:

<u>Forensic Imaging</u>

59. After securing the Subject Vehicle, or if sufficient information is available pre-search to make the decision, the executing agents will determine the feasibility of obtaining forensic images of electronic storage devices while onsite. A forensic image is an exact physical copy of the hard drive or other media. A forensic image captures all the data on the hard drive or other media without the data being viewed and without changing

15

the data. Absent unusual circumstances, it is essential that a forensic image be obtained prior to conducting any search of the data for information subject to seizure pursuant to this warrant. The feasibility decision will be based upon the number of devices, the nature of the devices, the volume of data to be imaged, the need for and availability of computer forensics specialists, the availability of the imaging tools required to suit the number and nature of devices found, and the security of the search team. The preference is to image onsite if it can be done in a reasonable amount of time and without jeopardizing the integrity of the data and the agents' safety. The number and type of computers and other devices and the number, type, and size of hard drives are of critical importance. It can take several hours to image a single hard drive - the bigger the drive, the longer it takes. As additional devices and hard drives are added, the length of time that the agents must remain onsite can become dangerous and impractical.

60.     If it is not feasible to image the data on-site, computers and other electronic storage devices, including any necessary peripheral devices, will be transported offsite for imaging. After verified images have been obtained, the owner of the devices will be notified and the original devices returned within forty-five (45) days of seizure absent further application to this court.

<u>Identification and Extraction of Relevant Data</u>

61.     After obtaining a forensic image, the data will be analyzed to identify and extract data subject to seizure pursuant to this warrant. Analysis of the data following the creation of the forensic image can be a highly technical process requiring specific expertise, equipment and software. There are thousands of different hardware items and software programs, and different versions of the same programs, that can be commercially purchased, installed, and custom-configured on a user's computer system. Computers are easily customized by their users. Even apparently identical computers in an office or home environment can be different with respect to configuration, including permissions and access rights, passwords, data storage, and security. It is not unusual for a computer

1   forensic examiner to have to obtain specialized hardware or software, and train with it, in
2   order to view and analyze imaged data.

3        62.    Analyzing the contents of a computer or other electronic storage device, even
4   without significant technical challenges, can be very challenging.  Searching by keywords,
5   for example, often yields many thousands of hits, each of which must be reviewed in its
6   context by the examiner to determine whether the data is within the scope of the warrant.
7   Merely finding a relevant hit does not end the review process for several reasons.  The
8   computer may have stored metadata and other information about a relevant electronic
9   record – e.g., who created it, when and how it was created or downloaded or copied, when
10  it was last accessed, when it was last modified, when it was last printed, and when it was
11  deleted.  Keyword searches may also fail to discover relevant electronic records, depending
12  on how the records were created, stored, or used.  For example, keywords search text, but
13  many common electronic mail, database, and spreadsheet applications do not store data as
14  searchable text.  Instead, the data is saved in a proprietary non-text format.  Documents
15  printed by the computer, even if the document was never saved to the hard drive, are
16  recoverable by forensic programs because the printed document is stored as a graphic
17  image.  Graphic images, unlike text, are not subject to keyword searches.  Similarly, faxes
18  sent to the computer are stored as graphic images and not as text.  In addition, a particular
19  relevant piece of data does not exist in a vacuum.  To determine who created, modified,
20  copied, downloaded, transferred, communicated about, deleted, or printed the data requires
21  a search of other events that occurred on the computer in the time periods surrounding
22  activity regarding the relevant data.  Information about which user had logged in, whether
23  users share passwords, whether the computer was connected to other computers or
24  networks, and whether the user accessed or used other programs or services in the time
25  period surrounding events with the relevant data can help determine who was sitting at the
26  keyboard.

27       63.    It is often difficult or impossible to determine the identity of the person using
28  the computer when incriminating data has been created, modified, accessed, deleted,

1   printed, copied, uploaded, or downloaded solely by reviewing the incriminating data.
2   Computers generate substantial information about data and about users that generally is
3   not visible to users.  Computer-generated data, including registry information, computer
4   logs, user profiles and passwords, web-browsing history, cookies and application and
5   operating system metadata, often provides evidence of who was using the computer at a
6   relevant time.  In addition, evidence such as electronic mail, chat sessions, photographs
7   and videos, calendars and address books stored on the computer may identify the user at a
8   particular, relevant time.  The manner in which the user has structured and named files, run
9   or accessed particular applications, and created or accessed other, non-incriminating files
10  or documents, may serve to identify a particular user.  For example, if an incriminating
11  document is found on the computer but attribution is an issue, other documents or files
12  created around that same time may provide circumstantial evidence of the identity of the
13  user that created the incriminating document.

14       64.    Analyzing data has become increasingly time-consuming as the volume of
15  data stored on a typical computer system and available storage devices has become mind-
16  boggling.  For example, a single megabyte of storage space is roughly equivalent of 500
17  double-spaced pages of text.  A single gigabyte of storage space, or 1,000 megabytes, is
18  roughly equivalent of 500,000 double-spaced pages of text.  Computer hard drives are now
19  being sold for personal computers capable of storing up to 2 terabytes (2,000 gigabytes) of
20  data.  And, this data may be stored in a variety of formats or encrypted (several new
21  commercially available operating systems provide for automatic encryption of data upon
22  shutdown of the computer).  The sheer volume of data also has extended the time that it
23  takes to analyze data.  Running keyword searches takes longer and results in more hits that
24  must be individually examined for relevance.   And, once reviewed, relevant data leads to
25  new keywords and new avenues for identifying data subject to seizure pursuant to the
26  warrant.

27       65.    Based on the foregoing, identifying and extracting data subject to seizure
28  pursuant to this warrant may require a range of data analysis techniques, including hashing

18

1  tools to identify data subject to seizure pursuant to this warrant, and to exclude certain data
2  from analysis, such as known operating system and application files.  The identification
3  and extraction process, accordingly, may take weeks or months. The personnel conducting
4  the identification and extraction of data – which may include United States law
5  enforcement officers, those working on their behalf, or their Australian counterparts – will
6  complete the analysis within one-hundred twenty (120) days of this warrant, absent further
7  application to this court.

8      66.    All forensic analysis of the imaged data will employ search protocols directed
9  exclusively to the identification and extraction of data within the scope of this warrant.

10  Genuine Risks of Destruction

11  Based upon my experience and training, and the experience and training of other agents
12  with whom I have communicated, electronically stored data can be permanently deleted or
13  modified by users possessing basic computer skills.  In this case, only if the subject receives
14  advance warning of the execution of this warrant, will there be a genuine risk of destruction
15  of evidence.

16

17  Prior Attempts to Obtain Data

    67.    The United States has not attempted to obtain this data by other means.

18

19  Procedures to Protect Third Party Privacy

20      68.    All forensic analysis of the imaged data will employ search protocols directed
exclusively to the identification and extraction of data within the scope of this warrant.  In
21  the event that the personnel lawfully conducting the analysis identify information
22  pertaining to crimes outside the scope of the warrant, such information will not be used
23  except to obtain a new warrant authorizing a search for such information.  In the event a
24  new warrant is obtained, the government may make use the data seized in any lawful
25  manner.  Absent a new warrant, the personnel conducting the analysis may continue to
26  search for and seize data only within the scope of this warrant.

27

28

## CONCLUSION

Based on the foregoing, I respectfully submit that Alex Dion committed the crimes of Murder and Fraud, in violation of Sections 18 and 192E of the Crimes Act of 1900 of New South Wales; and,

WHEREFORE, I request that the court issue search warrants for the Subject Vehicle, to seize the evidence in attachment B.

Michelle Hart, Special Agent

Federal Bureau of Investigation

SUBSCRIBED and SWORN to before me April  5 , 2019.

HON. ANDREW G. SCHOPLER

UNITED STATES MAGISTRATE JUDGE

20

# EXHIBIT 1



**ATTACHMENT A**
**DESCRIPTION OF ITEM TO BE SEARCHED**

The item to be searched is a black Chevrolet Malibu bearing California license plate 6ZQH509 and VIN number 1G1ZC5E04CF133780 located at the FBI San Diego Division, 10385 Vista Sorrento Parkway, San Diego, CA 92121.  It is pictured below:



## **ATTACHMENT B**

## **ITEMS TO BE SEIZED**

The items below, limited to evidence relating to violations of Sections 18 (Murder) and 192E (Fraud) of the Crimes Act of 1900 of New South Wales (Australia), whether in printed or electronic format, for the period of May 1, 2018 through the present:

a. Property belonging to Phetmang, including bank cards, identification documents, a thumb drive, mobile phones, and other items;

b. communications, records, or other evidence of statements made by Dion or others regarding his interactions with Phetmang and/or Phetmang's murder, including, but not limited to, communications with El-Anani and other associates of Phetmang;

c. receipts, records, bank or credit card statements, or other such documents reflecting purchases made by Dion at Bunnings;

d. receipts, records, or other such documents reflecting or related to purchases made or transactions attempted using Phetmang's bank or credit cards;

e. receipts, records, itineraries, communications, or other such documents reflecting or related to the purchase of the air travel for Dion from Australia to the United States on or about May 27, 2018;

f. records or communications in any form, whether electronic or otherwise, regarding the sale, purchase, or transfer of methamphetamine or other related transactions between Dion and others, including but not limited to Phetmang, El-Anani, Hart, and Ghahremani;

g. records or communications in any form, whether electronic or otherwise, between Dion and others regarding the reason, timing, or other matters relating to his departure from Australia to the United States on or about May 27, 2018.

1     h.   documents, receipts, communications, or other records relating to Dion's

2          travel to and from Tijuana, Mexico between May 27, 2018 and June 30,

3          2018.

4          The items described above may be searched and seized irrespective of whether

5    they are stored or maintained in electronic, magnetic, optical, digital, or paper format.

6    This warrant specifically authorizes the search and seizure of records maintained on

7    computer storage media, including mobile phones, computer hard drives, diskettes, USB

8    storage devices (e.g., thumb drives, external hard drives), or any other media capable of

9    storing information in a form readable by a computer. This also includes all copies of the

10   information described above that may be located on any mobile phones, handheld

11   computers or other portable computing or data storage device, and any stored information

12   that is maintained as archive or backup copies.  To obtain the above-described records,

13   the agents are authorized to seize the computers and/or storage media and make a mirror

14   image of the computers and/or storage media off-site for the purposes of searching.

15   Upon completion of the offsite imaging, the agents will attempt to return the seized

16   computers and/or storage media.  If the information described above cannot be read and

17   understood without the software or programs that created those files or records, the

18   agents are authorized to seize such software and any documentation and manuals that

19   describe the software and instruct on its installation and use.  For the same reason, the

20   agents are authorized to seize information about any encryption software and passwords

21   as well as information about any "cloud" storage devices and passwords.

22

23

24

25

26

27

28